### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN HENRY SCRIVENS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-1127 SRW |
| | ) | |
| RICK LESENBEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION, MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Shawn Henry Scrivens (registration no. 505119), an inmate at Moberly Correctional Center (MCC), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $30.17. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $150.83. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $30.17.

## 28 U.S.C. § 1915(e)

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone*

*v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  However, even pro se complaints must allege facts

which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286

(8th Cir. 1980).  Federal courts are not required to assume facts that are not alleged, *Stone*, 364

F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who

proceed without counsel.  *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff, Henry Scrivens, brings this action pursuant to 42 U.S.C. § 1983 alleging

violations of his civil rights during his incarceration as a pretrial detainee at the Phelps County

Jail. He names the following individuals as defendants: Sheriff Rick Lesenbee; Jail Administrator

Matt Schulz; Dr. Unknown Burris; Dr. Karen Doerry; and Corporal Shane Rapaut. Defendants are

named in both their individual and official capacities.

Plaintiff claims that he was arrested "on or about August 16-17, 2018" and placed in

confinement at the Phelps County Jail as a pretrial detainee. A review of Missouri.Case.Net, the

Missouri Online docketing system, shows the following. A probable cause statement was filed in

*State v. Scrivens*, No. 18PH-CR01369 (25th Judicial Circuit, Phelps County Court), on September

15, 2018. It was written by Deputy Derrick Lewis, who stated:

> I have probable cause to believe that Shawn E. Scrivens, . . ., did on or about the
> 13th day of September, 2018, commit one or more of the following criminal
> offenses, DOMESTIC ASSAULT IN THE SECOND DEGREE, . . .The facts
> supporting this belief are as follows:
>
> On 9/13/2018, Scrivens and his romantic partner Stephanie were involved in a
> physical domestic involving a firearm. Both parties were arguing over Brooks'
> involvement with an uninvolved male. The argument escalated and Scrivens
> alleged that Brooks took out a pistol which he took away from her. She attacked
> him and ripped off his shirt. He went into the residence to get another shirt and as
> he came out he attempted to get his belongings from the vehicle. She had locked
> the doors and began to drive away. He stated he jumped into the back of the truck
> and was telling her to stop and slapped the lid of the toolbox. The lid came open
> and broke the back window out of the truck. She advised Deputy Oberkirsh that he
> had used the pistol to break the back window out of the truck. She stopped the truck
> and Scrivens jumped out of the vehicle. She stated she ran him over with the vehicle

causing injury to his left knee and shoulder as well as causing several abrasions. She stated as she was driving away he fired the weapon at her but did not strike her. When I asked him if he had fired the weapon he stated he could not answer the question. He stated he would not lie but would not say something that would send him to jail.

The probable cause statement indicates that plaintiff was arrested on September 14, 2018, but he was not placed in the custody of Phelps County Jail until September 15, 2018.

A criminal complaint was filed against plaintiff on September 15, 2018, charging him with unlawful possession of a firearm and discharging a firearm from a motor vehicle (prior offender). *State v. Scrivens*, No. 18PH-CR01369 (25th Judicial Circuit, Phelps County Court). A warrant was issued for plaintiff's arrest on that same date, and he was served at the Phelps County Sheriff's Department. Bond was set at $500,000. *Id.*[1]  Plaintiff pled guilty to unlawful possession of a firearm on March 7, 2019. *State v. Scrivens*, 18PH-CR01369-01 (25th Judicial Circuit, Phelps County Court). He was sentenced on that same date to ten (10) years' imprisonment in the Missouri Department of Corrections. *Id.*

In the instant complaint, plaintiff asserts that he was provided "necessary diabetic medical treatment" at the Phelps County Jail from "August 16-17, 2018" through the first "47 days of confinement."[2] He purports that after the forty-seventh (47th) day of his confinement at Phelps County Jail, Dr. Unknown Burris issued a discontinuation of the insulin orders at the Jail.

Plaintiff has not provided any factual guidance as to why defendant Burris purportedly discontinued his insulin. He merely states that Dr. Burris was contractually responsible for treating the inmates at the Jail. He states in a conclusory fashion that after the insulin was discontinued, there was no intervention from Dr. Karen Doerry or Corporal Shane Rapaut.

---

[1] The Court has reviewed Missouri.Case.Net. No additional criminal cases were brought against plaintiff in 2018 as far as the Court is aware.

[2] The Court is confused by plaintiff's statement that he was incarcerated at the Phelps County Jail in August of 2018. As noted above, it does not appear he was incarcerated at the Jail until September 15, 2018. Perhaps plaintiff is merely mistaken as to the date of his incarceration.

Plaintiff claims that after "defendants' collective refusal" to provide treatment for his serious medical needs, plaintiff began to suffer loss of vision, hearing and almost lost his life due to the actions of all listed defendants. Plaintiff also alleges that following 120 days of "treatment refusal" he entered a guilty plea for the sole purpose of receiving proper diabetic medical treatment.[3]

Assuming plaintiff was mistaken about the date of his incarceration at the Jail, and he was actually taken into incarceration on September 15, 2018, then he ran out of insulin on or about November 1, 2018. Plaintiff states in his complaint that he went the next one-hundred-twenty-five days without insulin. This would take plaintiff up through March 6, 2019. The Court notes that plaintiff pled guilty and was sentenced on March 7, 2019. The docket indicates that the last date plaintiff was incarcerated at the Jail was March 7, 2019. He was transferred to the Missouri Department of Corrections at that time.

Last, plaintiff asserts:

> while under the care and supervision of Schultz, Burris, Doerry and Rapaut plaintiff was unlawfully subjected to the blatant deliberate indifference at the hands of all listed defendants via a custom, policy and practice to knowingly, deliberately, purposely and intentionally deny life preserving treatment to plaintiff for his serious medical needs.

Plaintiff seeks monetary damages and injunctive relief.

## Discussion

### A.    Official Capacity Claims against Defendants

Plaintiff brings this action against defendants in their official capacities. A suit brought against an official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's employer. *Will v. Michigan Dep't of State Police*, 491 U.S.

---

[3] Plaintiff states in his complaint that statements requesting medical treatment are in the Circuit Court record. The Court has reviewed the docket on Missouri.Case.Net and been unable to find any such requests for medical treatment.

58, 71 (1989).  In other words, the real party in interest in an official capacity suit is not the named

official, but the governmental entity.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  *See also Elder-Keep*

*v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official

capacity is actually a suit against the entity for which the official is an agent").

Plaintiff alleges defendants are employees of the Phelps County Jail.  As such, a suit against

them in their official capacities is actually a suit against the Jail itself.  However, neither a Jail nor

a sheriff's department is a suable entity under § 1983.  *See Owens v. Scott Cty. Jail*, 328 F.3d 1026,

1027 (8th Cir. 2003); *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992); and

*De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001).

Even if Phelps County was substituted as the employer, plaintiff's § 1983 official capacity

claims would still fail.  A local governing body such as Phelps County can be sued directly

under § 1983, however, in order to prevail on this type of claim, plaintiff must establish the

governmental entity's liability for the alleged conduct.  *See Monell v. Dep't of Soc. Servs. of City*

*of New York*, 436 U.S. 658, 690 (1978); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th

Cir. 2016).

Plaintiff has not alleged **facts** to support the proposition that any injuries he sustained was

the result of an unconstitutional municipal policy, unofficial custom, or failure to train, and has

therefore failed to establish the county's liability.  *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061

(8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no

facts in his complaint that would demonstrate the existence of a policy or custom" that caused the

alleged deprivation of plaintiff's rights).  Rather, he has simply alleged, through a conclusory

statement, that defendants' actions were the result of such a "custom, policy and practice."

In *Monell*, the Supreme Court held that a municipality or local governing body can be

directly liable under § 1983 for monetary, declaratory, or injunctive relief. 436 at 690-91. Such

liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can prove municipal liability.

First, plaintiff can show the existence of an unconstitutional policy.  "Policy" refers to an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 700 (8th Cir. 2016).  *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers."  *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).[4] Plaintiff has not alleged that there is a policy or custom of failing to give

---

[4] Plaintiff has failed to allege facts supporting his conclusory statement that he was unlawfully subjected deliberate indifference as a result of an unconstitutional "custom, policy or practice to knowingly, deliberately, purposely, and intentionally deny life preserving treatment to plaintiff for his serious medical needs." Nothing in plaintiff's facts shows that it wasn't a purported individual decision by Dr. Burris alone that allegedly denied plaintiff access to insulin.

inmates at the Jail insulin or even medical treatment. In fact, he alleges he received medical treatment, or insulin during his first 47 days at the Jail. Additionally, he has not alleged any facts relative to the existence of such a policy of denying treatment, such as other inmates who were also denied insulin.

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).  As noted above, plaintiff has not alleged a pattern of a denial of medical treatment or facts relative to a denial of insulin in the Jail. As noted above, he was in fact given insulin during his first month in a half at the Jail. He has not given any additional facts as to why insulin was not given after those first forty-seven days.

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom.  *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint **must allege facts** supporting the proposition that an unconstitutional policy or custom exists.  *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff **presents no facts** to support the proposition that Phelps County has an unconstitutional policy or custom that caused plaintiff's constitutional rights to be violated or engaged in a deliberately indifferent failure to train or supervise. Plaintiff has not shown that a policy exists because none of his **facts** point to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *See Angarita*, 981 F.2d at 1546.  Plaintiff has also not shown a "widespread, persistent pattern of unconstitutional misconduct" by Phelps County employees, much less that such misconduct was tacitly authorized by officials of Phelps County.  *See Johnson*, 725 F.3d at 828.

Thus, plaintiff has failed to state a municipal liability claim against Phelps County, and his claim against it will be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Plaintiff's claims against the individual defendants in their official capacities will also be dismissed.

### B.  Deliberate Indifference Claims Against Defendants

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs.  *Luckert v. Dodge Cty.,* 684 F.3d 808, 817 (8th Cir. 2012).  *See also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn,* 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

To survive initial review, plaintiff must plead facts sufficient to state a plausible claim for deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); Camberos v. Branstad, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle,* 429 U.S. at 106. To adequately plead deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of, but deliberately disregarded those needs. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner,* 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted). Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle,* 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, the objective severity of the deprivation should also be measured by reference to the effect of the delay in treatment. *Jackson v. Riebold,* 815 F.3d 1114, 1120 (8th Cir. 2016) (citing *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005)).

Based on plaintiff's assertion that he suffers from diabetes and that Dr. Burris had been treating his diabetes with insulin and then refused to treat him with insulin and he got sicker, the Court finds that plaintiff has alleged enough to state enough for a deliberate indifference to his serious medical needs claim. The Court must accept these allegations as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019) (stating that a court must accept the allegations contained in the complaint as true and make all reasonable inferences in plaintiff's favor).

Therefore, the Court will direct the Clerk of Court to issue process on Dr. Unknown Burris in his individual capacity as to plaintiff's claim of deliberate indifference to medical needs.

Plaintiff, however, has not provided enough factual evidence to show that the remaining defendants were deliberately indifferent to his serious medical needs. He has not, for example, provided factual allegations that he specifically sought treatment for his diabetes from Dr. Doerry after Dr. Burris took his insulin away and that Dr. Doerry denied him insulin for his diabetes after that time. Moreover, he has not indicated in his facts that he asked the remaining defendants, Sheriff Rick Lesenbee, Jail Administrator Matt Schulz, and Corporal Shane Rapaut, for treatment for his diabetes and they refused him such treatment.[5]

Although plaintiff has alleged that he sought help from "defendants" he has not alleged which defendants he specifically sought help from his diabetes for and when this purportedly occurred. Plaintiff must state specifically, and not in generalities, the essence of his claim, and he must enunciate which of the defendants violated his rights or failed to act when he sought assistance for his medical care. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). In the instant action, plaintiff has not set forth any facts indicating that any of the remaining defendants, besides Dr. Burris, were directly involved in or personally responsible for the alleged violations of his constitutional rights. As such, the claims against these defendants are subject to dismissal.

### Plaintiff's Motion for Appointment of Counsel

There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). In determining whether to appoint counsel, the Court considers several factors, including (1) whether the plaintiff has

---

[5] It appears he has named Sheriff Lesenbee and Jail Administator Shulz for the sole purpose of respondeat superior, which is not available in this action. *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995)(respondeat superior theory inapplicable in § 1983 suits).

presented non-frivolous allegations supporting his or her prayer for relief; (2) whether the plaintiff will substantially benefit from the appointment of counsel; (3) whether there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) whether the factual and legal issues presented by the action are complex. *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005.

Plaintiff has presented non-frivolous allegations in his complaint. However, he has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case are complex.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #3] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $30.17 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Dr. Unknown Burris in his individual capacity for deliberate indifference to his serious medical needs.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendant Dr. Unknown Burris shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendant Rick Lesenbee, Matt Schulz, Karen Doerry and Shane Rapaut because, as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #2] is **DENIED at this time.**

**IT IS FURTHER ORDERED** that this case is assigned to Track 5: Prisoner Standard.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 11<u>th</u> day of December, 2020.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE